DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant William Strebler has appealed from his conviction in the Summit County Court of Common Pleas. This Court affirms.
 I {¶ 2} Appellant was indicted on one count of operating a motor vehicle while under the influence in violation of R.C.4511.19(A)(1)(a). As a result of Appellant's five previous convictions for driving under the influence, the indictment contained a specification pursuant to R.C. 2941.1413.
 {¶ 3} Appellant pled not guilty to the indictment and the matter proceeded to a jury trial on September 26, 2005. At the close of the State's case, Appellant moved for acquittal and the trial court denied the motion. Appellant then presented evidence and renewed his motion for acquittal, which was again denied. The jury found Appellant guilty of driving under the influence with the specification. Appellant received an aggregate sentence of one year of incarceration. Appellant has timely appealed his conviction, raising one assignment of error for review.
 II Assignment of Error
"THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR DIRECTED VERDICT PURSUANT TO CRIMINAL RULE 29 BECAUSE THE APPELLEE PRESENTED INSUFFICIENT EVIDENCE IN ORDER TO MEET EACH AND EVERY ELEMENT OF THE INDICTED OFFENSES. IN ADDITION THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 4} In his sole assignment of error, Appellant has argued that the State produced insufficient evidence to support his conviction and that his conviction was against the manifest weight of the evidence. Specifically, Appellant has alleged that the State failed to demonstrate that he was impaired. This Court disagrees.
 {¶ 5} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390
(Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991),61 Ohio St.3d 259, 279. Furthermore:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also,Thompkins, 78 Ohio St.3d at 386.
In State v. Roberts, this Court explained:
"[S]ufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *4. (Emphasis omitted).
Accordingly, we address Appellant's challenge to the weight of the evidence first, as it is dispositive of his claim of sufficiency.
 {¶ 6} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court. Karchesv. Cincinnati (1988), 38 Ohio St.3d 12, 19. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten,33 Ohio App.3d at 340.
 {¶ 7} Appellant was convicted of driving while under the influence of alcohol or drugs in violation of R.C.4511.19(A)(1)(a), which states as follows:
"No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."
This Court has previously addressed the type of evidence required to support a conviction pursuant to R.C. 4511.19(A)(1).
"[I]n DUI prosecutions, the state is not required to establish that a defendant was actually impaired while driving, but rather, need only show an impaired driving ability. State v. Zentner,
9th Dist. No. 02CA0040, 2003-Ohio-2352, at ¶ 19, citing State v.Holland (Dec. 17, 1999), 11th Dist. No. 98-P-0066. `To prove impaired driving ability, the state can rely on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired.' Holland,
[supra], citing State v. Richards (Oct. 15, 1999), 11th Dist. No. 98-P-0069[.] Furthermore, `[v]irtually any lay witness, without special qualifications, may testify as to whether or not an individual is intoxicated.' Zentner at ¶ 19, quoting Statev. DeLong, 5th Dist. No. 02CA35, 2002-Ohio-5289, at ¶ 60."State v. Slone, 9th Dist. No. 04CA0103-M, 2005-Ohio-3325, at ¶9.
While the above reasoning is typically applied to alcohol consumption, we find it equally applicable to determining whether an individual is under the influence of a drug of abuse. SeeState v. Stephenson, 4th Dist. No. 05CA30, 2006-Ohio-2563, at ¶21.
 {¶ 8} In support of his argument, Appellant has argued that the description of the physical effects of his medical conditions fully contradicted the State's evidence of impairment. We disagree.
 {¶ 9} The State presented its case through four witnesses: Jim Zushin, Deputy Mark McElroy, Deputy Wes Dobbins, and chemist Dr. Nickolas O'Donnell. These individuals testified as follows.
 {¶ 10} Zushin testified that he was in his garage on the early morning hours of April 7, 2005. Appellant pulled into that driveway and began speaking to Zushin. Appellant asserted that he was at the home to sell fuel additives and that he had spoken with Zushin's daughter earlier in the week. Zushin testified that his daughter had not been home that week and informed Appellant that he must be at the wrong home. Zushin indicated that Appellant had difficulty walking, fumbled with his keys while trying to open the trunk of his car, had mumbled speech, and had cloudy eyes. Following his encounter with Appellant, Zushin contacted the local police and informed them of the make and model of Appellant's vehicle.
 {¶ 11} Deputy McElroy testified as follows. He began to investigate Appellant following the phone call made by Zushin. Based upon statements Zushin attributed to Appellant regarding stereo equipment, McElroy proceeded to a local stereo store. Outside the store, McElroy encountered a vehicle which matched the description given by Zushin. McElroy indicated that Appellant appeared very disoriented when he approached him and that his eyes were bloodshot. When McElroy asked for Appellant's driver's license, Appellant fumbled through his wallet and produced a credit card. McElroy informed Appellant that the card was not his identification. In turn, Appellant looked through his wallet for another minute before producing the license. McElroy testified that the license was in plain sight behind a clear cover in the wallet.
 {¶ 12} McElroy continued his testimony as follows. He asked whether Appellant had been drinking or using drugs and Appellant indicated that he was using prescription Methadone. Appellant then produced the prescription bottle from his pocket and directed McElroy to a second bottle in his car. McElroy continued, stating that after placing Appellant under arrest, he completed a series of routine booking questions for individuals suspecting of driving under the influence. When asked to fill in the date, Appellant wrote "March 26, 1996." The actual date was April 7, 2005. When asked to fill in the day of the week, Appellant wrote "Tuesday." Appellant was actually arrested on a Thursday.
 {¶ 13} Deputy Dobbins testified as follows. He joined Deputy McElroy on the scene. At that time, Dobbins observed that Appellant was unstable on his feet, that Appellant's speech was mumbled, that Appellant's eyes were bloodshot, and that Appellant's face was flushed. Dobbins then performed field sobriety tests. During the horizontal gaze nystagmus test, Dobbins noted that the test revealed one "clue" that Appellant was impaired. Dobbins then attempted to administer the walk-and-turn test. Dobbins testified that he had to re-explain the directions to Appellant. Dobbins noted that Appellant missed numerous of the required heel to toe steps, took too many steps, did not walk in a straight line for the length of the test, and used his arm for balance. Dobbins testified that each of these violations of the instructions signified impairment. Dobbins then administered the one-legged stand test. Again, Appellant was unable to successfully complete the test, rapidly counting but not reaching the target number and using his arms for balance. Dobbins concluded, stating that these actions are also signs of impairment.
 {¶ 14} Finally, the State called chemist Nickolas O'Donnell. O'Donnell testified that he tested Appellant's urine and that it was positive for Methadone. O'Donnell continued, noting that testing could not be done to determine the level of Methadone in Appellant's urine.
 {¶ 15} Once the State rested its case, Appellant called Dr. Brian Heim to the stand. Dr. Heim testified that he was Appellant's treating physician. He indicated that Appellant had chronic pain as a result of a prior automobile accident, spinal stenosis, and fibromyalgia. Dr. Heim continued, testifying that Appellant's condition caused him to walk with an abnormal gait and would have prevented Appellant from properly completing the walk-and-turn test and the one-legged stand test. Dr. Heim, however, admitted that Appellant's medical condition would not have caused him to be confused nor have resulted in an inability to answer the officers' questions or follow their directions. Furthermore, Dr. Heim admitted that he was unaware of any effect that Appellant's medical condition would have on the horizontal gaze nystagmus test.
 {¶ 16} Upon review of the evidence, this Court cannot say that the jury lost its way in finding Appellant guilty of driving under the influence of a drug of abuse. The evidence is undisputed that Appellant was driving his car on the day in question. The evidence is further undisputed that Appellant, by his own admission, was taking Methadone on the day in question. Assuming arguendo that Dr. Heim's testimony undermined the reliability of the walk-and-turn test and the one-legged stand test, Appellant's claim still must fail.
 {¶ 17} "Field sobriety tests are not even a necessary factor in order to arrest or convict for OMVI. Otherwise, those with certain medical conditions would have a free pass to drive drunk or under the influence of a drug of abuse." (Quotations omitted.)Stephenson at ¶ 19. Assuming that Appellant's medical condition accounted for his failure of the field sobriety tests, Dr. Heim's testimony does not refute the remaining evidence produced by the State.
 {¶ 18} By Dr. Heim's admission, Appellant's medical condition would not have caused him to be confused. Appellant, however, approached Zushin, insisting that he had met with Zushin's daughter. Zushin's testimony indicated that his daughter was away at college and could not have spoken with Appellant. Undaunted, Appellant continued to insist that he had been to Zushin's house earlier in the week. Furthermore, Appellant was unable to understand the directions on how to complete the field sobriety tests. Additionally, Appellant was unable to locate his own driver's license in his wallet, despite it being plainly visible to the officer through a clear sleeve in the wallet. Finally, when asked the day of the week, Appellant gave the incorrect day, and when asked the date, Appellant was wrong by nearly nine years. "[S]uch evidence revealed [that] Appellant's ability to act and react were altered from normal because he was under the influence of a drug of abuse, namely the prescription methadone * * * Appellant admitted having taken that day." Id. at ¶ 23.
 {¶ 19} In addition, Dr. Heim did not attribute Appellant's mumbled speech, bloodshot eyes, or cloudy eyes to Appellant's medical condition. Accordingly, they were properly considered as physiological factors which evidenced Appellant's impairment.Slone at ¶ 9. Accordingly, we cannot say the jury lost its way in finding Appellant guilty of driving under the influence of a drug of abuse.
 {¶ 20} Having disposed of Appellant's challenge to the weight of the evidence, we similarly dispose of his sufficiency challenge. See Roberts, supra, at *2. Appellant's sole assignment of error lacks merit.
 III {¶ 21} Appellant's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J. Baird, J. Concur.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)