DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Roger Simms, appeals his conviction and sentence in the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On the evening of September 19, 2006, Deputy Wayne Dyke responded to a dispatch regarding a suspected drunken driver on Interstate 77 North near Arlington Road. Shortly after receiving the dispatch, Deputy Dyke passed the vehicle as it drove southbound on Arlington Road, and he noted that the vehicle was weaving left of center. Deputy Dyke turned his cruiser around, followed the vehicle, and initiated a traffic stop after observing that the driver continued to weave across the center line. He arrested Mr. Simms after conducting field sobriety tests at the roadside. Mr. Simms was convicted of operating a motor vehicle while under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a), with a specification for prior convictions, and in violation of R.C. 4511.19(A)(2), and of failure to drive within marked lanes *Page 2 
in violation of R.C. 4511.33. The trial court sentenced him to concurrent mandatory prison terms of one year for each violation of R.C. 4511.19(A) and a mandatory two-year prison term for the specification, to be served consecutively to the other prison terms. The trial court also ordered Mr. Simms to pay a $100 fine and suspended his driver's license for twenty years. Mr. Simms timely appealed.
 II. ASSIGNMENT OF ERROR "THE APPELLANT'S CONVICTION OF OPERATING A VEHICLE UNDER THE INFLUENCE OF ALCOHOL OR DRUGS PER RC 4511.19(A)(1)(A), WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. FURTHERMORE, THERE WAS INSUFFICIENT EVIDENCE FOR THE JURY TO MAKE SUCH A FINDING OF GUILT."
 {¶ 3} Mr. Simms' assignment of error is that his conviction for operating a motor vehicle while under the influence of alcohol is based on insufficient evidence and is against the manifest weight of the evidence. Mr. Simms has argued that his performance on the field sobriety tests was not the result of alcohol consumption, but of various medical conditions that made it difficult for him to maintain his balance. Mr. Simms has not challenged his convictions under R.C. 4511.19(A)(2) or R.C. 4511.33, or the specification accompanying his conviction under R.C. 4511.19(A)(1)(a).
 {¶ 4} When reviewing the sufficiency of the evidence supporting a conviction, this Court must review the evidence at trial in the light most favorable to the prosecution "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Sufficiency is, therefore, "a test of adequacy." State v. Thompkins, 78 Ohio St.3d 380, 386. *Page 3 
 {¶ 5} A challenge to the weight of the evidence presents a different question. "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence, this Court does not view the evidence in the light most favorable to the State, but:
 "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. Because sufficient evidence is required to take a case to the jury, the conclusion that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 6} R.C. 4511.19(A)(1)(a) provides that "No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." Testimony regarding a defendant's performance on field sobriety tests is relevant evidence with respect to operation of a motor vehicle while under the influence of alcohol, but failure to perform the tests successfully is not an element of the offense, nor is it evidence without which a conviction cannot stand. State v. Kurjian, 9th Dist. No. 06CA0010-M,2006-Ohio-6669, at ¶ 18. "Field sobriety tests are not even a necessary factor in order to arrest or convict for OMVI. Otherwise, those with certain *Page 4 
medical conditions would have a free pass to drive drunk or under the influence of a drug of abuse." State v. Strebler, 9th Dist. No. 23003,2006-Ohio-5711, at ¶ 17, quoting State v. Stephenson, 4th Dist. No. 05CA30, 2006-Ohio-2563, at ¶ 19. Impaired ability to operate a motor vehicle may be demonstrated through physiological factors such as the odor of alcohol, bloodshot eyes, and slurred speech, because these conditions also "demonstrate that a person's physical and mental ability to drive was impaired." State v. Sloan, 9th Dist. No. 04CA0103-M,2005-Ohio-3325, at ¶ 9, quoting State v. Holland (Dec. 17, 1999), 11th Dist. No. 98-P-0066.
 {¶ 7} In this case, Deputy Dyke testified that he identified Mr. Simms' car after responding to a dispatch regarding a possible drunk driver. Deputy Dyke explained that he saw the vehicle weaving left of center and turned around to follow the driver. The car "kept on going left of center," and Deputy Dyke testified that he initiated a traffic stop near the intersection of Arlington and Greensburg roads. Deputy Dyke recalled that he approached the vehicle from behind and that when he drew close enough to observe the driver, he smelled a "strong odor" of an alcoholic beverage and noted that the driver's eyes were "bloodshot, dilated." He testified that the driver's speech was "mumbling, slurred."
 {¶ 8} Deputy Dyke identified Mr. Simms as the driver of the vehicle and testified that he asked Mr. Simms to step out of the car to perform field sobriety tests. According to Deputy Dyke, his practice during every stop is to ask whether the subject has medical conditions that would affect his ability to perform the tests. He explained that a medical condition would not excuse an individual from performing the tests, but would provide additional information relevant to one's ability to perform them successfully. Deputy Dyke did not specifically recall what Mr. Simms' response to his inquiry had been and confirmed that he did not record the response in his narrative report. *Page 5 
 {¶ 9} Deputy Dyke testified that Mr. Simms refused to cooperate with the horizontal gaze nystagmus test and that he recorded the test as a failure. He also recorded both the heel-toe and the one-legged stand tests as failures. With respect to the heel-toe test, Deputy Dyke recalled that Mr. Simms had to lean against his cruiser to regain his balance. According to Deputy Dyke, Mr. Simms "was swaying back and forth, [and] it was getting too dangerous to do the test." Mr. Simms' performance on the one-legged stand yielded similar results: "once he lifted up a leg, he started to fall. He couldn't perform the test. I decided it was too dangerous. * * * He was actually almost falling." Deputy Dyke testified that Mr. Simms' performance was consistent with someone who was "well under the influence" of alcohol.
 {¶ 10} Mr. Simms, who testified in his own defense, testified that he had spent approximately two hours prior to his arrest at a bar, where he consumed only two beers. He denied that he had been weaving outside of his lane. Mr. Simms confirmed that Deputy Dyke asked whether he had any medical conditions that would affect his ability to perform the field sobriety tests. According to Mr. Simms, he told Deputy Dyke that he had infirmities in one knee and in his lower back. Mr. Simms testified that when he tried to comply with the one-legged stand test, he felt a "shooting pain" related to the condition of his back. Mr. Simms introduced medical records for the purpose of substantiating his back and knee conditions.
 {¶ 11} Having reviewed the evidence in this case, along with the reasonable inferences that can be drawn therefrom, this Court concludes that Mr. Simms' conviction is not against the manifest weight of the evidence. While it appears that Mr. Simms has medical conditions that could impair his ability to perform certain physical activities, his performance on the field sobriety tests is not the only evidence in this case. Mr. Simms did not provide any medical justification for his blood-shot eyes or slurred speech. See, e.g., Strebler, 2006-Ohio-5711, *Page 6 
at ¶ 17-19. In addition, Deputy Dyke noted a strong odor of alcohol on Mr. Simms' person. Mr. Simms' conviction is not against the manifest weight of the evidence. It follows that his conviction is supported by sufficient evidence as well. See Roberts at *2.
 {¶ 12} Mr. Simms' assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 MOORE, P. J. DICKINSON, J. CONCUR *Page 7 
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.) *Page 1