[Cite as *Parma v. Benedict*, 2015-Ohio-3340.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101480**

## CITY OF PARMA

PLAINTIFF-APPELLEE

vs.

## KEVIN E. BENEDICT

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Parma Municipal Court
Case No. CR-13-TRC-09688

**BEFORE:** Celebrezze, A.J., Keough, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 20, 2015

**ATTORNEY FOR APPELLANT**

Paul A. Mancino
Mancino Mancino & Mancino
75 Public Square Bldg.
Suite 1016
Cleveland, Ohio   44113-2098


**ATTORNEYS FOR APPELLEE**

Timothy G. Dobeck
City of Parma Prosecutor
BY:    John J. Spellacy
Assistant Prosecutor
5555 Powers Blvd.
Parma, Ohio   44129

FRANK D. CELEBREZZE, JR., A.J.:

{¶1} Defendant-appellant, Kevin Benedict ("Benedict"), appeals his convictions for operating a vehicle under the influence of alcohol or drugs ("OVI") pursuant to R.C. 4511.19(A)(1), OVI with a prior conviction and refusal under R.C. 4511.19(A)(2), and weaving pursuant to Parma Codified Ordinances ("PCO") 331.36. After a careful review of the record and relevant case law, we affirm Benedict's convictions.

## I. Procedural and Factual History

{¶2} On June 27, 2013, Benedict was riding his motorcycle in the westbound lanes of Snow Road in the city of Parma, Ohio ("the City") around midnight. Patrolman Todd Hanley of the Parma Police Department was riding in a police cruiser behind Benedict and noticed Benedict weaving within his lane of travel and crossing the double-yellow line. When he observed Benedict nearly fall off his motorcycle, Patrolman Hanley initiated a traffic stop in the parking lot of a local business at the intersection of Snow and Pearl Roads.

{¶3} Patrolman Hanley testified that when he exited the cruiser and asked Benedict for his license and registration, Benedict appeared inattentive, fumbled with his wallet, and smelled of alcohol. Once Patrolman Hanley had Benedict's identification, he ran a Law Enforcement Automated Data System search and radioed Benedict's information in

to dispatch. Both inquiries revealed that Benedict had been convicted in Parma Municipal Court for OVI in 2011.

{¶4} At some point after Benedict was pulled over, Patrolman Hanley testified that he requested a back-up cruiser with a video camera in order to record the administration of field sobriety tests. Patrolman Christopher Smith responded to the scene with a police cruiser capable of recording the tests. Patrolman Hanley asked Benedict to complete field sobriety tests and administered a portion of the horizontal gaze nystagmus ("HGN") test. Patrolman Smith verified that the video camera was operational and enabled prior to the test. After the HGN test, Benedict refused to submit to any more tests. Patrolman Hanley testified that he Mirandized Benedict, handcuffed him, and placed him in the back of the patrol car.

{¶5} Patrolman Smith acknowledged that he was responsible for ensuring that the video recording of Benedict's sobriety test was preserved for trial. Patrolman Smith admitted that he filled out an evidence slip with information about the recording and submitted the slip to the evidence room in accord with the police department's procedure. However, the videotape of Benedict's field sobriety test was never produced for trial because the evidence room personnel alleged they never received Patrolman Smith's completed slip.

{¶6} Patrolman Hanley testified that he transported Benedict to the Parma Police Station in his cruiser. On the ride back, Patrolman Hanley indicated a stronger odor of alcohol emanating from Benedict. Once at the station, Benedict was brought inside,

patted down, and prepped for booking. Corrections Officer Jerome Lascko was present and participated in Benedict's booking. Officer Lascko testified that he was in the holding room with Patrolman Hanley and Benedict, and that he prepared the machine and necessary documentation for Benedict's breath test.

{¶7} Patrolman Hanley began a colloquy with Benedict in the holding room. After Mirandizing Benedict again, Patrolman Hanley confronted Benedict with his prior conviction. When Patrolman Hanley stated that Benedict's conviction was from two years prior, Benedict noted that he had been convicted in December 2011. Patrolman Hanley then informed Benedict about the consequences of refusing to submit to a breath test, administered the OVI questionnaire, and filled in the corresponding blanks with Benedict's answers. Officer Lascko testified that Benedict smelled of alcohol and was uncooperative during the questionnaire. Patrolman Hanley then asked, "Do you choose to take the breath test: yes or no?" When Benedict refused, Patrolman Hanley asked him again. Benedict replied, "Nope. Pretty sure I didn't stutter the first time." The booking process and the administration of the questionnaire were recorded, and the video was played in its entirety for the jury.

{¶8} Benedict was charged with OVI under R.C. 4511.19(A)(1), OVI with a prior conviction and refusal under R.C. 4511.19(A)(2), weaving in violation of PCO 331.36, and driving left of a double yellow line in violation of PCO 331.07. The case proceeded to a jury trial where Benedict was convicted of OVI and OVI with a prior conviction and refusal. The remaining charges were tried to the bench, and the judge found Benedict

guilty of weaving. The trial court sentenced Benedict to 180 days in jail and fined him $1,000 for the OVI, OVI with a prior conviction, and refusal convictions. However, the court suspended 170 days of Benedict's sentence and $300 of his fine. The trial court also imposed a $100 fine for the weaving conviction, but then suspended the entire $100 payment. Moreover, Benedict's license was suspended for two years, he was sentenced to a five-session MADD seminar, and he was ordered to attend Alcoholics Anonymous meetings three times a week. Benedict filed this timely appeal asserting eleven assignments of error.

## II. Law and Analysis

### A. Admission of Prior Conviction

{¶9} In his first assignment of error, Benedict argues that he was denied due process when the trial court admitted evidence of a prior OVI conviction. Specifically, Benedict argues that the admission of his prior conviction was prejudicial because the conviction only enhanced the degree of the sentence and did not enhance the degree of the offense under R.C. 4511.19(A)(2). We disagree.

{¶10} In furtherance of his argument, Benedict directs our attention to the Ohio Supreme Court's decision in *State v. Allen*, 29 Ohio St.3d 53, 506 N.E.2d 199 (1987). In *Allen*, the defendant was charged with operating a motor vehicle while under the influence of alcohol pursuant to R.C. 4511.19(A). *Id.* at 55. The Ohio Supreme Court held that "[w]here the existence of a prior conviction enhances the penalty for a subsequent offense, but does not elevate the degree thereof, the prior conviction is not an

essential element of the subsequent offense, and need not be alleged in the indictment or proved as a matter of fact." *Id*. at syllabus. Further, the Ohio Supreme Court noted that the existence of a prior conviction is normally so inflammatory that it should not be revealed to the jury unless otherwise authorized by rule or statute. *Id*. at 55.

{¶11} After *Allen* was decided, the Ohio General Assembly enacted R.C. 4511.19(A)(2). In *State v. Hoover*, 123 Ohio St.3d 418, 2009-Ohio-4993, 916 N.E.2d 1056, ¶ 13, the Ohio Supreme Court analyzed R.C. 4511.19(A)(2) and stated the three elements necessary for a charge under the statute: (1) a DUI conviction within 20 years of the current violation; (2) operation of a motor vehicle under the influence of alcohol or drugs; and (3) refusal to submit to a chemical test while under arrest for the current DUI. The court stated that "[a] person's refusal to take a chemical test is simply an additional element that must be proven beyond a reasonable doubt along with the person's previous DUI conviction to distinguish the offense from a violation of R.C. 4511.19(A)(1)(a)." *Id*. at ¶ 21.

{¶12} Relying on *Hoover*, the Twelfth District concluded that a prior OVI conviction within 20 years is an essential element of the crime that the state must prove beyond a reasonable doubt. *State v. Miller*, 12th Dist. Warren No. CA2011-02-013, 2012-Ohio-997, ¶ 12. Thus, a court cannot preclude the state from presenting evidence of the prior conviction because the evidence is "not only proper, but required." *Id.*, citing *State v. Holland*, 5th Dist. Stark No. 2011 CA 00104, 2012-Ohio-486, ¶ 18-21.

{¶13}   In accord with *Hoover* and *Miller*, we find that a prior OVI conviction within 20 years is now an essential element of the charge under R.C. 4511.19(A)(2). Thus, the City was required to prove that element beyond a reasonable doubt and the court did not err when it permitted the City to present evidence of Benedict's prior OVI conviction.

{¶14} Benedict's first assignment of error is overruled.

### B.   Defective Entry

{¶15} In his second assignment of error, Benedict argues that the trial court erred when it admitted a defective certified copy of the journal entry from his prior OVI conviction.   Specifically, Benedict contends that the journal entry was defective because it was not signed by a judge in compliance with Crim.R. 32(C).

{¶16} In *State v. Gwen*, 134 Ohio St.3d 284, 2012-Ohio-5046, 982 N.E.2d 626, paragraph one of the syllabus, the Ohio Supreme Court held that a judgment entry of conviction under R.C. 2945.75(B)(1) is one method of establishing a prior conviction.   If the state opts to provide a judgment of conviction under R.C. 2945.75(B)(1), the entry is required to conform to Crim.R. 32(C).   *Id.* at paragraph two of the syllabus. Under Crim.R. 32(C), a final entry of conviction must contain (1) the fact of conviction; (2) the sentence; (3) the judge's signature; and (4) the time stamp indicating the entry upon the journal by the clerk.

{¶17}   Here, the certified copy of the journal entry admitted into evidence at trial is clearly defective.   Upon examination, the only endorsement on the journal entry is by a

deputy clerk of the city of Parma Clerk of Courts. We therefore agree with Benedict that the journal entry was defective for failing to comply with the requirements of Crim.R. 32(C), and the trial court erred by admitting the document into evidence.

{¶18} Our analysis, however, does not end there. A judgment entry of conviction is not the only method by which the City may establish a prior conviction. The Ohio Supreme Court also acknowledged that prior convictions may be established through other means, such as by stipulation and admission. *Gwen* at ¶ 12, 14.

{¶19} In this case, Benedict admitted that he had a prior conviction from December 2011 on the booking video, which was played in open court for the jury without objection. When Patrolman Hanley stated that he had discovered a prior OVI conviction from "last year," Benedict explained that the conviction was from "two years ago" in "December of 2011." Benedict's statements confirm the conviction reflected in the certified copy of the journal entry. Thus, Benedict's admission that he had a prior conviction in December 2011 was sufficient to render the prior conviction established.

{¶20} Under this circumstance, we believe that the trial court's admission of the defective entry was harmless error. Crim.R. 52(A). Benedict's statement that he had a prior OVI conviction from December 2011 at the time he refused to take the breath test was properly admitted under Evid.R. 801(D)(2)(a) as an admission by a party opponent. Moreover, in light of his admission, Benedict cannot show that the outcome of his case would have been different but for the entry of the defective journal entry into evidence. While we agree with Benedict that the trial court erred in admitting the defective journal

entry, Benedict's admission was sufficient to allow jurors to conclude beyond a reasonable doubt that he had a prior OVI conviction.

**{¶21}** Benedict's second assignment of error is overruled.

### C.  Admission of OVI Questionnaire

**{¶22}** In his third assignment of error, Benedict argues that he was denied due process of law when the court admitted the OVI questionnaire because it was inadmissible as hearsay.

**{¶23}** "In criminal cases, Evid.R. 803(8)(b) excludes from the public-records-and-reports exception to hearsay police reports that 'recite an officer's observations of criminal activities or observations made as part of an investigation of criminal activities.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 111, quoting *State v. Ward*, 15 Ohio St.3d 355, 358, 474 N.E.2d 300 (1984).  The OVI questionnaire contains Patrolman Hanley's observations of Benedict's appearance and demeanor during the OVI investigation and booking process.  Thus, the questionnaire contains hearsay, and the trial court should not have submitted it to the jury.

**{¶24}** However, the trial court's error in submitting the questionnaire to the jury was harmless.  Crim.R. 52(A).  Under the Ohio Rules of Evidence, Patrolman Hanley was permitted to testify about his own observations, which were detailed within the OVI questionnaire.  The questionnaire also contains Benedict's answers to questions Patrolman Hanley asked during the booking process, and statements acknowledging

Benedict's refusal to submit to further testing. Benedict's answers were properly admissible under Evid.R. 801(D)(2)(a) because a defendant's own out-of-court statements, offered against him at trial, are not hearsay. Patrolman Hanley testified that he asked the questions on the OVI questionnaire and recorded Benedict's answers to the best of his ability. Further, Patrolman Hanley and Officer Lascko both testified that Benedict refused to submit to further testing.

{¶25} Moreover, the booking video, in which Patrolman Hanley administered the questionnaire and recorded Benedict's answers and refusal to take a breath test, was played in open court for the jury and admitted as an exhibit without objection. In light of the officers' testimonies and the booking video, Benedict cannot show he was prejudiced by the admission of the OVI questionnaire. Thus, while the trial court erred in admitting the OVI questionnaire, the error was harmless in light of the officers' testimonies, the booking video, and Benedict's statements.

{¶26} Benedict's third assignment of error is overruled.

### D. Admission of Post-*Miranda* Refusals

{¶27} In his fourth assignment of error, Benedict argues that he was denied a fair trial when the court admitted evidence of his post-*Miranda* refusal to answer questions or cooperate. Specifically, Benedict argues that the trial court erred by admitting evidence of his refusal to take a breath test through the OVI questionnaire and testimonies of Patrolman Hanley and Officer Lascko.

**{¶28}** The United States Supreme Court held that the admission of a defendant's refusal to take a chemical test does not violate a defendant's Fifth and Fourteenth Amendment rights. *South Dakota v. Neville*, 459 U.S. 553, 564-566, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). Similarly, the Ohio Supreme Court held that a defendant's refusal to submit to a chemical test may properly be considered when evaluating whether or not a defendant was under the influence of alcohol. *Maumee v. Anistik*, 69 Ohio St.3d 339, 632 N.E.2d 497 (1994), syllabus.

**{¶29}** After *Neville* and *Anistik*, this court addressed whether or not a defendant's refusal to submit to a breath test after being charged under R.C. 4511.19(A)(2) violated the protections of the Fifth and Fourteenth Amendments *Middleburg Hts v. Henniger*, 8th Dist. Cuyahoga No. 86882, 2006-Ohio-3715, ¶ 7. In *Henniger*, we held that refusals to submit to chemical testing are not testimonial for Fifth and Fourteenth Amendment purposes because they are used to show the defendant did not perform the physical act of taking the test when prompted. *Id.* at ¶ 22, citing *Deering v. Brown*, 839 F.2d 539, 542 (9th Cir.1988); *State v. Morale*, 174 Vt. 213, 811 A.2d 185 (2002). We also concluded that the state does not directly compel a refusal when a defendant is given a choice between submitting to chemical testing or having his refusal used against him in court. *Id.* at ¶ 20, citing *Neville*, 459 U.S. at 79.

**{¶30}** We see no need to depart from our holding in *Henniger*. Benedict was given the choice to submit to or refuse the breath test. The record clearly reflects that Patrolman Hanley twice gave Benedict the option to take the breath test or refuse. In

doing so, Patrolman Hanley also explained the consequences of refusal. Benedict chose not to comply. Additionally, the record is devoid of any evidence demonstrating that Patrolman Hanley or other officers made assurances to Benedict in order to compel his refusal.

{¶31} Benedict's fourth assignment of error is overruled.

### E. Failure to Instruct Jury on Expert Testimony

{¶32} In his fifth assigned error, Benedict claims that his due process rights were violated because the trial court failed to inform the jury in considering expert testimony, specifically with regard to the administration of the field sobriety tests. Although Benedict acknowledges that the trial court gave a general credibility instruction, he argues that the court should have given a special instruction regarding expert testimony and substantial compliance.

{¶33} We do not believe that a special jury instruction was warranted in this case. The failure of a party to object to "improprieties in the jury instructions, as required by Crim.R. 30 is a waiver of the issue on appeal." *State v. Moats*, 8th Dist. Cuyahoga No. 91646, 2009-Ohio-3063,¶ 45, quoting *State v. Underwood*, 3 Ohio St.3d 12, 13, 444 N.E.2d 1332 (1983). In an OVI case, an officer may testify about the results of the field sobriety test if the prosecution demonstrates that the tests substantially complied with testing standards. R.C. 4511.19(D)(4)(b). Once the results have been admitted, defense counsel may challenge the reliability of the evidence. R.C. 4511.19(D)(4)(b)(iii) provides:

If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate.

**{¶34}** Patrolman Hanley testified extensively about HGN test protocol, the number of HGN tests he has administered, his training and qualifications, and Benedict's performance on the evening of the arrest. Moreover, Patrolman Hanley demonstrated how to perform the HGN test for the jury. When asked by the prosecutor, Patrolman Hanley admitted he "very closely" performed the test in compliance with the National Highway Traffic Safety Administration ("NHTSA") manual. Defense counsel extensively cross-examined Patrolman Hanley about his conformity to the NHTSA manual, but did not proffer the NHTSA manual for admission into evidence. Furthermore, defense counsel neither objected to Patrolman Hanley's testimony regarding the NHTSA manual and the HGN test, nor objected to the trial court's general credibility instruction. As such, we must consider this issue waived and, without more, we cannot say that the trial court should have given a special instruction in this case.

**{¶35}** Benedict's fifth assignment of error is overruled.

### F. Jury Instructions Regarding Refusal

**{¶36}** In his sixth, seventh, and eighth assignments of error, Benedict takes issue with the trial court's instruction to the jury regarding the refusal to submit to a breath test. Specifically, Benedict argues that the trial court erred by allowing the jury to make an adverse inference from the refusal, by failing to inform the jury on all elements of

"refusal," and by usurping the jury's function by informing the jury that Benedict refused to take the breath test. We disagree.

{¶37} "The admission or exclusion of evidence and the giving of jury instructions rest in a trial court's sound discretion. In order to find an abuse of that discretion, an appellate court must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable * * *." *Moats* at ¶ 48, quoting *State v. Chambers*, 5th Dist. Stark No. 2005CA00277, 2006-Ohio-958, ¶ 8. The use of a defendant's refusal to submit to a chemical test as evidence of being under the influence is controlled by an Ohio Supreme Court-sanctioned jury instruction, which states:

> Evidence has been introduced indicating the defendant was asked but refused to submit to a chemical test of his breath to determine the amount of alcohol in his system, for the purpose of suggesting that the defendant believed he was under the influence of alcohol. If you find the defendant refused to submit to said test, you may, but are not required to, consider this evidence along with all the other facts and circumstances in evidence in deciding whether the defendant was under the influence of alcohol.

*Anistik*, 69 Ohio St.3d 339 at 344. The above-quoted instruction was described by the Ohio Supreme Court as providing juries with the proper degree of neutrality. *Id.* Furthermore, the instruction allows juries to consider the totality of the circumstances involving a defendant's choice to decline testing. *Id*. Even so, the Ohio Supreme Court also acknowledged that it was "permissible for a trial judge to instruct a jury that the defendant's refusal to submit to a chemical test is evidence of his or her intoxication at the time of taking the test." *Id.*

**{¶38}** Here, the trial court's jury instruction regarding refusal was identical to the instruction sanctioned by the Ohio Supreme Court in *Anistik*. Moreover, it is clear that *Anistik* authorizes, but does not require, trial courts to further instruct on what a jury may consider when evaluating refusal. As the Ohio Supreme Court also noted in *Anistik*, the instruction given by the trial court in this case did not usurp the function of the jury because it was sufficiently neutral and properly allowed the jury to attach whatever significance it chose to Benedict's refusal. Finally, a review of the transcript reveals that the trial court properly charged the jury with the correct elements of the crime under R.C. 4511.19(A)(2). Because the trial court comported with Ohio law and precedent, we cannot say that it abused its discretion in instructing the jury on the element of refusal.

**{¶39}** Benedict's sixth, seventh, and eighth assignments of error are overruled.

### G. Motion for Acquittal

**{¶40}** In his ninth assigned error, Benedict claims he was denied due process when the court overruled his Crim.R. 29(A) motion for acquittal. Crim.R. 29(A) governs motions for acquittal, and provides that a judgment of acquittal must be entered if the evidence is insufficient to sustain a conviction. "The test an appellate court must apply in reviewing a challenge based on a denial of a motion for acquittal is the same as a challenge based on sufficiency of the evidence to support a conviction." *State v. Macalla*, 8th Dist. Cuyahoga No. 88825, 2008-Ohio-569, ¶ 38, citing *State v. Bell*, 8th Dist. Cuyahoga No. 65356, 1994 Ohio App. LEXIS 2291 (May 26, 1994). When the sufficiency of the evidence is challenged, "the relevant inquiry is whether, after viewing

the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶41} In this case, defense counsel made a Crim.R. 29(A) motion for acquittal on Count Two, OVI with a prior conviction and refusal under R.C. 4511.19(A)(2), which provides in pertinent part:

> No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or pleaded guilty to a violation of this division, a violation of division (A)(1) or (B) of this section, or any other equivalent offense shall do both of the following:
>
> (a) Operate any vehicle * * * within this state while under the influence of alcohol, a drug of abuse, or a combination of them;
>
> (b) Subsequent to being arrested for operating the vehicle * * * as described in division (A)(2)(a) of this section, being asked by a law enforcement officer to submit to a chemical test or tests under section 4511.191 of the Revised Code, and being advised by the officer in accordance with section 4511.192 of the Revised Code of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests.

{¶42} As explained in addressing Benedict's second assignment of error, we believe the City provided sufficient evidence to demonstrate that Benedict had a prior OVI conviction within the last 20 years under R.C. 4511.19(A)(2). Thus, we need only consider the remaining two elements.

### 1. Operating a Vehicle While Under the Influence of Alcohol

**{¶43}** The City supplied sufficient evidence to show that Benedict was operating a vehicle while under the influence of alcohol pursuant to R.C. 4511.19(A)(2)(a). This court and many of our sister districts have recognized that field sobriety tests are not required for an OVI conviction. *Solon v. Hrivnak*, 8th Dist. Cuyahoga No. 100411, 2014-Ohio-3135, ¶ 17, citing *State v. Strebler*, 9th Dist. Summit No. 23003, 2006-Ohio-5711, ¶ 17; *State v. Stephenson*, 4th Dist. Lawrence No. 05CA30, 2006-Ohio-2563, ¶ 19; *State v. Rouse*, 7th Dist. Belmont No. 04 BE 53, 2005-Ohio-6328. Instead, prosecutors may establish impaired driving ability through coordination tests, such as field sobriety tests, and "physiological factors such as slurred speech, bloodshot eyes, and the odor of alcohol." *Id.* at ¶ 18, citing *State v. Clark*, 8th Dist. Cuyahoga No. 88731, 2007-Ohio-3777, ¶ 13; *State v. Simms*, 9th Dist. Summit No. 23957, 2008-Ohio-4848, ¶ 6; *State v. Holland*, 11th Dist. Portage No. 98-P-0066, 1999 Ohio App. LEXIS 6143 (Dec. 17, 1999).

**{¶44}** In this case, the City presented evidence both of Benedict's physiological characteristics during the incident and the results of a field sobriety test. Patrolman Hanley testified that he observed Benedict cross over the double yellow lines and weave in and out of his lane on his motorcycle. When Patrolman Hanley pulled Benedict over and asked for identification, he observed an inattentive Benedict wobbling and fumbling with his wallet. Patrolman Hanley also noticed Benedict's delayed hand motions and bloodshot, glassy eyes. In the outside air, Patrolman Hanley detected a faint odor of alcohol emanating from Benedict. Additionally, Patrolman Hanley testified that

Benedict's eyes jerked back and forth during the HGN test, which Patrolman Hanley stated was a indicator of impairment.

{¶45} After Benedict was placed in the back of the police cruiser, Patrolman Hanley testified that the odor of alcohol became more noticeable. Upon arrival at the police station for booking, Officer Lascko explained that he smelled a moderate odor of alcohol on Benedict. Officer Lascko also testified that Benedict was not cooperative during the booking process and the administration of the OVI questionnaire. The evidence regarding Benedict's uncooperativeness was fortified when the booking video was played and showed Benedict's disrespectful attitude toward officers and balking at questions. In light of the foregoing, we believe that the City provided sufficient evidence from which the jury could conclude that Benedict was operating his motorcycle under the influence of alcohol.

## 2. Refusal

{¶46} Similarly, the record is replete with evidence indicating refusal under R.C. 4511.19(A)(2)(b). Patrolman Hanley testified that after confirming Benedict's prior OVI conviction at the station, he read Benedict the Bureau of Motor Vehicles 2255 form and advised him that he would be required to submit to a breath test. Patrolman Hanley also stated that he informed Benedict of the consequences of refusing the breath test. Both Officer Lascko and Patrolman Hanley stated that Benedict refused to take the test. Officer Lascko indicated that he made notes on the computer printout and the acknowledgment form that Benedict refused in compliance with department procedure.

The booking video played for the jury also shows Benedict outright refusing to take the test. Thus, there was sufficient evidence from which the jury could conclude that Benedict refused to take the breath test.

{¶47} Benedict's ninth assigned error is overruled.

### H. Manifest Weight of the Evidence

{¶48} In his tenth assigned error, Benedict asserts that he is entitled to a new trial because the jury's verdict was against the manifest weight of the evidence. A challenge to the manifest weight of the evidence attacks the credibility of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 679 N.E.2d 541 (1997). In evaluating a manifest weight of the evidence challenge, the trial court must act as a "thirteenth juror" and analyze whether the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Reversal should only be reserved for the "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

{¶49} Benedict argues that the missing police cruiser video misled the jury into believing that Patrolman Hanley's account of the HGN test and Benedict's arrest were accurate. We disagree. The missing police cruiser video was heavily addressed during the trial. Patrolmen Hanley and Smith gave detailed accounts of how field sobriety tests are able to be recorded by police cruisers, and the proper procedures for preserving those recordings for use at trial. Defense counsel cross-examined Patrolmen Hanley and

Smith about the missing video taken during Benedict's arrest, and both acknowledged that they did not know what happened to the video because they followed the proper procedures. "'When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury rejected the defendant's version of the facts and believed the testimony presented by the state.'" *State v. Gibson*, 8th Dist. Cuyahoga No. 101826, 2015-Ohio-2390, ¶ 38, quoting *State v. Hall*, 4th Dist. Ross No. 13CA3391, 2014-Ohio-2959, ¶ 28. The jury was free make its own determination of the officers' account of the administration of the HGN test, Benedict's arrest, and the missing recording. Thus, we cannot say that the jury lost its way in this case and created a manifest miscarriage of justice such that Benedict's conviction must be overturned.

**{¶50}** Benedict's tenth assigned error is overruled.

### I. Weaving

**{¶51}** In his final assigned error, Benedict contends that the trial court denied him due process when the court found him guilty of weaving pursuant to PCO 331.36. Specifically, Benedict contends that the Parma ordinance conflicts with a general state law. We disagree.

**{¶52}** PCO 331.36 reads, "No person shall operate a motor vehicle upon any street or highway in a weaving or zigzag course unless such irregular course is necessary for safe operation or in compliance with law." R.C. 4511.33(A), which Benedict claims supersedes the Parma ordinance, states in pertinent part:

Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:

(1) A vehicle * * * shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety.

{¶53} The long-standing rule for evaluating whether a city ordinance conflicts with a general state law is "[i]n determining whether an ordinance is in 'conflict' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids or prohibits, and vice versa." *Struthers v. Sokol*, 108 Ohio St. 263, 140 N.E. 519 (1923), paragraph two of the syllabus. The Ninth District has twice addressed this argument in connection with two identical municipal weaving ordinances. In *Medina v. Carver*, 9th Dist. Medina No. 2673-M, 1998 Ohio App. LEXIS 345 (Feb. 4, 1998), the Ninth District held that the state law's silence on weaving within a lane was not in conflict with the city ordinance's prohibition. Specifically, the court reasoned that a conflict does not exist "merely because certain specific acts are declared unlawful by the ordinance, which acts are not referred to in the general law[.]" *Id.* at * 7, citing *Akron Cellular Tel. Co. v. Hudson Village*, 115 Ohio App.3d 93, 99, 684 N.E.2d 734 (9th Dist.1996), quoting *Sokol*, 108 Ohio St. 263 at paragraph three of the syllabus.

{¶54} In *Cuyahoga Falls v. Morris*, 9th Dist. Summit No. 18861, 1998 Ohio App. LEXIS 3762 (Aug. 19, 1998), the Ninth District again held that the absence of state legislation prohibiting weaving within a lane demonstrates the lack of conflict with city

ordinances prohibiting such conduct. Specifically, the court held that "[b]ecause no state statute expressly or implicitly authorizes weaving, no conflict is created by a municipality prohibiting it." *Id.* at * 6.

**{¶55}** In *Mayfield Hts v. Molk*, 8th Dist. Cuyahoga No. 84703, 2005-Ohio-1176, ¶ 25, we favorably reviewed the Ninth District's precedent because it was relevant to addressing that appellant's sufficiency and manifest weight challenges. However, we did not adopt our sister district's precedent at that juncture because the validity of the Mayfield Heights weaving ordinance was not at issue. Because Benedict has raised the conflict between the City's weaving ordinance and R.C. 4511.33(A) in this case, we now adopt the Ninth District's rule and hold that PCO 331.36, which is identical to the ordinances analyzed in *Carver* and *Morris*, does not conflict with R.C. 4511.33(A) because the general state law does not expressly or impliedly prohibit weaving within a lane.

**{¶56}** Benedict's eleventh assigned error is overruled.

**{¶57}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., ADMINISTRATIVE JUDGE

KATHLEEN ANN KEOUGH, J., and
EILEEN T. GALLAGHER, J., CONCUR