DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant/Appellant, Jeffrey S. Stephenson, appeals from his conviction after a bench trial held in the Lawrence County Municipal Court. Appellant was convicted of operating a vehicle while under the influence of a drug of abuse, OVI, in violation of R.C. 4511.19(A)(1)(a), as well as a marked lanes violation. Appellant asserts that the trial court's finding of guilt, as to the OVI charge, was against the manifest weight of the evidence. Because we find that the State presented substantial evidence upon which the court could reasonably conclude that all the elements of the offense had been proven beyond a reasonable doubt, we overrule Appellant's sole assignment of error. Accordingly, we affirm the decision of the trial court.
 {¶ 2} The facts pertinent to this appeal are as follows. On June 2, 2005, at approximately noon, Appellant was driving home on County Road One in Lawrence County, Ohio. He was returning home after a trip to Sam's Club, located in Burlington, Ohio, where he had gone to pick up multiple prescriptions for medications that he had been out of for several days. Deputy Sisler of the Lawrence County Sheriff's Department was sitting stationery in the vicinity in which Appellant was traveling. Based upon information provided by another motorist, Deputy Sisler proceeded westbound on County Road One in search of a red corvette that was reported to be driving erratically. After locating the corvette, owned by Appellant, and observing erratic driving, Deputy Sisler ordered Appellant to pull over. After an Ohio State Highway Patrol Trooper arrived, based upon Appellant's condition, an ambulance was called, which transported Appellant to a local emergency room, where he was treated and released. No blood or urine testing was performed, however, Appellant was cited for OVI, in violation of R.C. 4511.19(A)(1)(a), as well as a marked lanes violation. Appellant was not arrested.
 {¶ 3} The matter was tried to the court on August 26, 2005. At trial, Deputy Sisler testified that once he located Appellant's vehicle on County Road One, he observed the vehicle veer off of the roadway into the grassy shoulder area on several occasions and then cross the center divider line, traveling westbound in the eastbound lane. Deputy Sisler testified that although he activated his lights, Appellant initially failed to stop. Not until Deputy Sisler activated his siren and gave an audible signal to stop, did Appellant pull over. Deputy Sisler further testified that upon approaching Appellant, he noted Appellant's speech was slurred and it was hard to understand him. He also noted Appellant had glassy eyes but did not smell of alcohol. He further testified that upon asking Appellant if he had taken any drugs or alcohol, Appellant responded that the he had taken methadone and morphine that day, but that he had not had any alcohol.
 {¶ 4} Deputy Sisler testified that he radioed his dispatch to contact the Ohio State Highway Patrol. In response to this request, Trooper Kobi arrived at the scene. Deputy Sisler testified that when he and Trooper Kobi got Appellant out of his vehicle he could hardly stand up and it was apparent he would not be able to perform any sobriety tests. He further testified that during this time, Appellant was mumbling, talking to people who were not there, and was talking as if he was on a cell phone, but he did not have a cell phone.
 {¶ 5} Trooper Kobi testified that when he arrived at the scene, Appellant was slouched over the wheel with his head on his shoulder and could not even hold his head up. Upon trying to engage Appellant in conversation, Trooper Kobi noted that Appellant's speech was mumbled and that he was not making sense. Trooper Kobi testified that at times Appellant was able to respond, but at other times he acted like he did not hear anything. Trooper Kobi also questioned whether Appellant had taken any drugs or alcohol, to which Appellant responded that he hadn't had any alcohol, but had taken prescription morphine and methadone that day. Because Trooper Kobi was concerned about Appellant's condition, he got Appellant out of the vehicle in order to get him into the air conditioned cruiser. Trooper Kobi testified that he had to carry Appellant to the cruiser.
 {¶ 6} Trooper Kobi also testified that after placing Appellant in the cruiser, he asked Appellant to provide him with a family contact. Appellant provided three different phone numbers for his aunt, none of which were correct. Earlier, while Appellant was still in his own vehicle, Trooper Kobi testified that he noticed a bag with nine prescription bottles in it laying in Appellant's seat. Based upon Appellant's conduct, coupled with the number of prescription medications found in Appellant's vehicle, as well as Appellant's admissions to taking methadone and morphine that day, Trooper Kobi concluded that Appellant was severely impaired and decided to call an ambulance, fearing that Appellant may have overdosed.
 {¶ 7} Appellant also testified at the trial and stated that although he rarely drives, he had driven to Sam's Club on the day of the incident to pick up several medications. He testified that he had not been feeling well and that he suffered from multiple physical problems, including lupus, orthopedic problems, hypertension and hyperthyroidism. When questioned about whether he remembered telling the officers that he had taken morphine and methadone that day, Appellant testified on direct examination as follows:
"Q: Okay now ah., (sic) on that particular day you've heard testimony that you told the Officers that you had methadone and morphine. First of all, do you recall that?
A: No.
Q: Had you had that?
A: It's possible, but I don't, (sic) I hadn't felt good and I don't know that I had. I don't take it like I should I take it less that I should . . ., (sic).
Q: Okay." (Emphasis added).
 {¶ 8} On cross examination, Appellant testified as follows:
"Q: And ah., (sic) you also testified that you possibly had those drugs you don't recall, but it's possible that you had those drugs [prescription methadone and morphine] prior to driving?
A: Not that day, no
Q: The day before?
A: Possibly
Q: Possibly, but you don't remember taking them the day of?
A: No
* * *
Q: * * * Now those officers testified that you indicated to them that you had been taking morphine and methadone ah., (sic) when they were there with you at the scene. Do you re., (sic) you say you don't remember telling them that?
A: No
Q: Do you dispute that you told them that?
A: I said I don't recall
Q: Okay so it's possible you'd said that; you just don'trecall?
A: Correct." (Emphasis added).
 {¶ 9} Appellant further testified that 1) he had to be helped to the cruiser because he cannot walk; 2) when he is off of his medication he has petit mal seizures; 3) on the day of the incident he was having a petit mal seizure; 4) his medical conditions caused the symptoms described by the officers; and 5) he was not under the influence of his prescribed drugs to the point that he could not drive.
 {¶ 10} On September 2, 2005, the trial court entered its Judgment Entry finding Appellant guilty of OVI and a marked lanes violation. Appellant was sentenced to fines and costs and his license was suspended for three years. In light of Appellant's medical condition, the trial court ordered 15 days home confinement, rather than imposing a jail sentence. It is from this Entry that Appellant brings his appeal, assigning the following error for our review.
 {¶ 11} "I. THE TRIAL COURT'S FINDING OF GUILT ON THE PART OF DEFENDANT/APPELLANT JEFFREY S. STEPHENSON WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 12} Appellant asserts that the trial court's finding of guilt was against the manifest weight of the evidence. The State responds by setting forth the standard of review for a sufficiency of evidence argument, asserting that substantial evidence was presented upon which the trier of fact reasonably concluded that all essential elements of the offense had been established beyond a reasonable doubt.
 {¶ 13} Although a verdict is supported by sufficient evidence, a court of appeals may nevertheless conclude that the verdict is against the manifest weight of the evidence. State v.Banks (1992), 78 Ohio App.3d 206, 214, 604 N.E.2d 219. A sufficiency of the evidence challenge tests whether the state's case is legally adequate to go to a jury in that it contains prima facie evidence of all of the elements of the charged offense. State. v. Martin (1983), 20 F.2d 777, 778. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia
(1979), 443 U.S. 307, 99 S.Ct. 2781. The two tests are distinct, notwithstanding dicta to the contrary in State v. Jenks, supra; See State v. Thompkins (1997), 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541, (Justice Cook, concurring).
 {¶ 14} Alternatively, when considering an appellant's claim that a conviction is against the manifest weight of the evidence, our role is to determine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998),84 Ohio St.3d 180, 193, 1998-Ohio-533, 702 N.E.2d 866. The reviewing court must dutifully examine the entire record, weighing the evidence and considering the credibility of witnesses, keeping in mind that credibility generally is an issue for the trier of fact to resolve. State v. Thomas (1982), 70 Ohio St.2d 79, 80,434 N.E.2d 1356; State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. The reviewing court may reverse the conviction if it appears that the fact finder, in resolving evidentiary conflicts, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered'."Thompkins, 78 Ohio St.3d at 387 (quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717). On the other hand, we will not reverse a conviction if the state presented substantial evidence upon which the trier of fact could reasonably conclude that all essential elements of the offense had been established beyond a reasonable doubt. State v. Eley
(1978), 56 Ohio St.2d 169, 383 N.E.2d 132, syllabus.
 {¶ 15} In his sole assignment of error, Appellant asserts that the trial court's finding of guilt was against the manifest weight of the evidence. Appellant was convicted of OVI, in violation of 4511.19(A)(1)(a), which provides:
"(A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:
(a) The person is under the influence of alcohol, a drug of abuse, or a combination of them."
 {¶ 16} Appellant asserts that the evidence at trial consisted of the following: 1) his erratic driving; (2) his semi-conscious state after being stopped; and 3) his statement that he had taken prescribed methadone and morphine sometime that day, with no specificity as to time or amount. Appellant argues that no testimony was offered that he displayed characteristics of a methadone or morphine overdose. As such, Appellant argues that he offered "a satisfactory and uncontradicted explanation for all three items of evidence." Appellant essentially argues that he was suffering from numerous physical problems which caused the symptoms described by the officers at trial, and that there was not a requisite showing of any impairment caused by taking his prescription medication. He claims that there was no material evidence at trial showing that his erratic driving was caused by any drug that he took.
 {¶ 17} The State counters Appellant's assertions by arguing that the testimony of both officers as well as Appellant, himself, show that Appellant was under the influence of a drug of abuse, namely morphine and methadone, at the time of the stop. The State cites several items of evidence, including Appellant's slurred speech, glassy eyes, inability to walk on his own, statement that he took morphine and methadone that day, and the trooper's concern that Appellant had overdosed, in support of the trial court's finding of guilt. The State further argues that the essential elements of the crime were proven beyond a reasonable doubt. We agree.
 {¶ 18} In the case sub judice, Appellant does not challenge the validity of the traffic stop. Clearly, the deputy had probable cause to stop Appellant based on his uncontested erratic driving. Nor does Appellant claim that the trooper did not have probable cause to arrest him for OVI, because Appellant was never actually arrested. Rather, he was merely cited for OVI and a marked lanes violation, and taken to the hospital where he was treated and released. Instead, Appellant argues that in light of his alternative explanation for his erratic driving, his conviction for OVI was against the manifest weight of the evidence.
 {¶ 19} Here, although there were no field sobriety test results or urine or blood tests to consider, we are not persuaded by Appellant's argument that his symptoms were caused solely as a result of his medical condition, rather than the prescription methadone and morphine that he admitted he had taken.[1]
Nor are we persuaded by Appellant's argument that there was not a requisite showing of any impairment caused by the medications. "[F]ield sobriety tests are not even a necessary factor in order to arrest or convict for OMVI. Otherwise, those with certain medical conditions would have a free pass to drive drunk [or under the influence of a drug of abuse]." State v. Rouse,
Belmont App. No. 04BE53, 2005-Ohio-6328.
 {¶ 20} The trier of fact may draw permissible inferences from the evidence. State v. Seiber (1990), 56 Ohio St.3d 4, 15,564 N.E.2d 408. Further, it is well settled under Ohio law that a defendant may be convicted solely on the basis of circumstantial evidence. State v. Kulig (1974), 37 Ohio St.2d 157,309 N.E.2d 897; State v. Hankerson (1982), 70 Ohio St.2d 87,434 N.E.2d 1362, certiori denied (1982), 459 U.S. 870, 103 S.Ct. 155; Statev. Kamel (1984), 12 Ohio St.3d 306, 466 N.E.2d 860. "* * * [P]roof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence. All three classes have equal probative value, and circumstantial evidence has no less value than the others. 1A Wigmore, Evidence (Tillers Rev. 1983), 944, Section 24 et seq." State v. Griffin (1979),13 Ohio App.3d 376, 377, 469 N.E.2d 1329. "Circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable." United States v. Andrino
(C.A. 9, 1974), 501 F.2d 1373, 1378.
 {¶ 21} In order to find Appellant guilty of Driving Under the Influence as charged, the trial court would have to find Appellant operated any vehicle, streetcar, or trackless trolley within this state, and that at the time of the operation, Appellant was (a) under the influence of alcohol; (b) a drug of abuse; or (c) a combination of them. We have previously held that "[a] driver of a motor vehicle is considered `under the influence' of alcohol when his `physical and mental ability to act and react are altered from the normal because of the consumption of alcohol'." State v. Carter (June 16, 1998), Washington App. No. 97CA13, 1998 WL 352588, citing State v.Hardy (1971), 28 Ohio St.2d 89, 91, 276 N.E.2d 247. Although our reasoning in that case applied to the issue of being under the influence of alcohol, we believe that the reasoning is equally applicable to the issue of being under the influence of a drug of abuse.
 {¶ 22} In the case sub judice, Appellant was stopped for erratic driving consisting of driving on the grassy shoulder and crossing the center line, driving westbound in an eastbound lane. Upon approaching Appellant, the deputy noticed slurred speech, glassy eyes, inability to communicate at times, and Appellant's apparent effort to talk to people who were not there. When the state trooper arrived, he noted the same things. Additionally, the officers noticed multiple prescription medications in Appellant's seat. When asked if he had taken drugs or alcohol, Appellant responded that he not had any alcohol but that he had taken prescription methadone and morphine. Based upon Appellant's condition, coupled with Appellant's statement, as well as the number of medications in Appellant's possession, the officers not only reasonably concluded that Appellant was severely impaired, but feared that he may have overdosed.
 {¶ 23} We find that this set of facts constitutes substantial evidence upon which the trial court could conclude that the State had proved its case beyond a reasonable doubt. Specifically, such evidence revealed Appellant's ability to act and react were altered from normal because he was under the influence of a drug of abuse, namely the prescription methadone and morphine Appellant admitted having taken that day. As such, we cannot conclude that the trial court clearly lost its way, thereby creating a manifest miscarriage of justice. Appellant's erratic driving, strange and at times incoherent behavior, coupled with his admissions of taking drugs of abuse support a reasonable inference that he was, in fact, driving under the influence. This is true despite the lack of evidence regarding blood or urine tests and field sobriety testing results. Consequently, we find that Appellant's conviction is not against the manifest weight of the evidence. Accordingly, we overrule Appellant's sole assignment of error and affirm the decision of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Harsha, P.J. and Kline, J.: Concur in Judgment Only.
[1] Although Appellant provided some conflicting testimony regarding his recollection as to whether he told the officers he had taken morphine and methadone the day of the traffic stop, Appellant did concede on cross examination that it was possible that he told the officers he had taken the drugs, but that he did not recall.