[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Richardson,* Slip Opinion No. 2016-Ohio-8448.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-8448

THE STATE OF OHIO, APPELLANT, *v.* RICHARDSON, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Richardson,* Slip Opinion No. 2016-Ohio-8448.]**

*Criminal law—R.C. 4511.19(A)—Operating a vehicle while under the influence— Court of appeals erred in concluding that prosecution failed to present sufficient evidence linking defendant's ingestion of drug of abuse with his impairment—Court of appeals' judgment reversed and cause remanded.*

(Nos. 2015-0629 and 2015-1048—Submitted February 10, 2016—Decided December 29, 2016.)

APPEAL from and CERTIFIED by the Court of Appeals for Montgomery County, No. 26191, 2015-Ohio-757.

_____

FRENCH, J.

{¶ 1} In this appeal, we consider what evidence is sufficient to convict a defendant charged with operating a vehicle while under the influence ("OVI") of a

drug of abuse. Here, the state presented evidence that the defendant's driving was impaired. The state also presented evidence that the defendant had ingested hydrocodone, a widely known drug of abuse. And the state presented an experienced police officer's testimony that the defendant appeared to be under the influence of pain medication at the time of his arrest. If believed, this evidence was sufficient to support the OVI conviction and no expert testimony was necessary. Because the Second District Court of Appeals reached a contrary holding, we reverse its judgment.

*Facts and Procedural History*

{¶ 2} Appellee, Clinton Richardson, set this case in motion by rear-ending at low speed a car stopped ahead of his pickup truck at a red traffic light. The driver of the stopped car approached Richardson to speak with him but found his speech slurred and incomprehensible. While attempting to exchange information, Richardson dropped all his cards on the ground. After the driver returned to her car, she felt it move a couple of times, as though nudged by Richardson's truck. She called the police because she feared for the safety of Richardson's child passenger.

{¶ 3} Dayton Police Officer Jonathan Miniard responded to the scene. When he approached Richardson's truck, he noticed that Richardson had tried to light a cigarette but had succeeded only in singeing his hair. Officer Miniard had to put Richardson's truck in park after Richardson failed to do so. The officer also noticed Richardson's slurred speech. And when he asked Richardson to exit the truck, he watched Richardson slide out.

{¶ 4} Officer Miniard administered standard field sobriety tests, which Richardson failed. And he asked Richardson to submit to a blood test, but Richardson refused. Ultimately, he arrested Richardson for OVI.

{¶ 5} Richardson had a prior felony-OVI conviction, so the grand jury indicted him on one third-degree-felony-OVI count. *See* R.C. 4511.19(G)(1)(e).

Because his small child was with him in the vehicle, the grand jury also indicted him on one count of endangering children.

**{¶ 6}** The parties tried the case to the court. The state relied on the testimony of the woman whose car Richardson rear-ended and Officer Miniard. In the defense case-in-chief, Richardson testified that he had a prescription for hydrocodone acetaminophen—pills containing 10 milligrams of hydrocodone and 325 milligrams of acetaminophen—but also that he had last taken the medication two days prior to the accident. He testified that at the time of the accident he was actually suffering from withdrawal from the medication. He further testified that he had been taking the medication for so long that he no longer experienced side effects from it. Richardson also presented expert testimony from Dr. Charles Russell, who specializes in emergency medicine and chemical dependency. Dr. Russell opined that Richardson's behavior at the time of the accident was consistent with the effects of withdrawal from an opiate such as hydrocodone and was inconsistent with being under the influence of an opiate.

**{¶ 7}** The trial court convicted Richardson of both charges and sentenced him to one year in prison. From that judgment, Richardson appealed to the Second District Court of Appeals.

**{¶ 8}** A divided panel of the Second District vacated the trial court's judgment, finding insufficient evidence to support Richardson's OVI conviction. Specifically, it held that there was no evidence to connect Richardson's use of hydrocodone with his impairment. 2015-Ohio-757, 29 N.E.3d 354, ¶ 27. With reasoning that we largely mirror, Judge Hall dissented: "On this record, where it is undeniably apparent that the defendant was substantially impaired because he had taken pain killers, more specifically hydrocodone, I do not believe it was necessary to introduce evidence of the pharmaceutical properties of what he ingested to find him guilty of driving under the influence." *Id*. at ¶ 36 (Hall, J., dissenting).

**{¶ 9}** The Second District certified that its judgment conflicted with *State v. Stephenson*, 4th Dist. Lawrence No. 05CA30, 2006-Ohio-2563. In case No. 2015-1048, we determined that a conflict existed. 143 Ohio St.3d 1439, 2015-Ohio-3427, 36 N.E.3d 187. The state of Ohio also filed a jurisdictional appeal in case No. 2015-0629, which we accepted. *Id*. We consolidated the cases for briefing. *Id*.

**Analysis**

**{¶ 10}** We begin with the certified-conflict question:

> "Once the State presents evidence that a person is impaired and has taken a specific prescription medication, is the trier of fact able to draw a reasonable inference that the driver has violated R.C. 4511.19(A)(1)(a) or R.C. 4511.19(A)(2) without evidence (lay or expert) as to how the medication actually affects the driver and/or expert testimony about whether the particular medication has the potential to impair a person's judgment or reflexes?"

143 Ohio St.3d 1439, 2015-Ohio-3427, 36 N.E.3d 187, quoting 2d Dist. Montgomery No. 26191 (May 27, 2015).

**{¶ 11}** Article IV, Section 3(B)(4) of the Ohio Constitution requires the judges of a court of appeals to certify a conflict to us whenever they reach a different answer—*to the same question*—from that reached by any other court of appeals of this state. Richardson succeeded below on a *sufficiency* challenge. But the conflict case, *State v. Stephenson*, 4th Dist. Lawrence No. 05CA30, 2006-Ohio-2563, involved only a *manifest-weight-of-the-evidence* challenge. *Id*. at ¶ 11. Nearly 20 years ago, we clarified that sufficiency and manifest weight are distinct tests. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), paragraph two of the syllabus; *accord Stephenson* at ¶ 13. That alone refutes the certification of a

4

conflict here. Yet the case for finding a conflict withers further when we consider that two of the three judges who decided *Stephenson* concurred in judgment only. We decertify the conflict and decline to answer the certified-conflict question.

{¶ 12} We next turn to the state's proposition of law:

> When a drug of abuse is at issue in an OVI case, evidence that a defendant was driving impaired, combined with evidence that a defendant took a specific drug of abuse at the time of the offense, is enough to meet a sufficiency of the evidence challenge, pursuant to R.C. 4511.19(A)(1).

Under the facts of this case, the proposition of law holds true.

{¶ 13} The sufficiency of the evidence is a test of adequacy. *Thompkins* at 386. When evaluating the adequacy of the evidence, we do not consider its credibility or effect in inducing belief. *Id*. at 386-387. Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law. *Id*. This naturally entails a review of the elements of the charged offense and a review of the state's evidence.

{¶ 14} The state charged Richardson with a third-degree-felony OVI under R.C. 4511.19(A)(2), which prohibits individuals with an OVI conviction within 20 years of the charged offense from operating a vehicle "while under the influence of alcohol, a drug of abuse, or a combination of them" and, after an OVI arrest, also prohibits them from refusing to submit to chemical tests.[1] The definition of "drug of abuse" is imported from R.C. 4506.01. R.C. 4511.181(E). That term means "any controlled substance, dangerous drug as defined in section 4729.01 of the Revised Code, or over-the-counter medication that, when taken in quantities

---

[1] Offenders who, like Richardson, have a prior felony-OVI conviction face third-degree-felony-OVI charges in all future OVI prosecutions. R.C. 4511.19(G)(1)(e).

exceeding the recommended dosage, can result in impairment of judgment or reflexes." R.C. 4506.01(M). R.C. 4729.01(F)(1)(b), in turn, defines "dangerous drug" to mean, among other things, a drug that may be dispensed only with a prescription under R.C. Chapter 3719. And R.C. 3719.41 places hydrocodone in Schedule II's list of opium and opium-derived narcotics—a class of drugs that may be dispensed only with a prescription, R.C. 3719.05(A)(3). Distilled for our purposes, those statutes say one thing: hydrocodone is a drug of abuse. So if the evidence, viewed in the light most favorable to the state, proved that Richardson had ingested hydrocodone and that it impaired his driving, it was sufficient to support his OVI conviction.

{¶ 15} The state presented sufficient evidence to prove that Richardson had ingested hydrocodone. The officer who responded to the accident, Officer Jonathan Miniard, had 14 years of experience as a Dayton police officer, and he had had training and refresher courses on impaired-driving detection. On direct examination, Miniard testified:

> [I] asked him had he taken any medication. He advised that he was on pain medication. I asked him if he had taken any. He said yeah.
>
> * * *
>
> Q. And he said he had taken pain medication.
>
> A. Yeah, he was on pain medication.
>
> Q. Okay. And from your conversation with him, the back and forth that you guys were engaged in, did it seem like he was currently on pain medication?
>
> A. Yes.

In addition, Richardson testified:

Q. But the two pain medications that you were taking at that point were ibuprofen, about 800 milligrams, and hydrocodone, 10-325.

A. Correct.

Q. Okay. So when you said to him, and regardless if you remember it or not, when you said to Officer Miniard you had taken pain medications, would you have been referring to one of those two medications?

A. Yes.

{¶ 16} After the prosecution played the police video of the incident, the following exchange occurred with Richardson:

Q. And you would agree with me that Officer Miniard asked you what you had taken. You mouthed something. We can't really hear it. But his response is did you say Oxycodone and you shook your head yes.

A. He said codone. That's all I heard—

Q. I apologize. Codone. When you shook—

A. He said codone.

Q. —your head yes to that question.

A. Sure. Hydrocodone.

Q. And he followed that up with how much did you take and you mouthed something and he says 3 milligrams and you shake your head no, correct?

A. Right.

Q. And then you mouth what appears to be the word thirty.
And he says 30 milligrams and you shake your head yes.

A. I—yes. Can I elaborate?

Q. No.

**{¶ 17}** Thirty milligrams of hydrocodone would be consistent with Richardson having consumed three of his hydrocodone acetaminophen pills. Viewed in the light most favorable to the state, this evidence was sufficient to establish that he had ingested hydrocodone.

**{¶ 18}** The state also presented significant—and sufficient—evidence of Richardson's impairment. Richardson rear-ended another vehicle. His speech was slurred. He slid, rather than stepped, out of his truck. He singed his hair while trying to light a cigarette. And upon testing by the responding officer, Richardson exhibited numerous indications of impairment: on the walk-and-turn test, he demonstrated seven out of eight possible signs of impairment, and during a one-legged stand, he put his foot down multiple times and kept the foot elevated for only about 8 out of 30 seconds during the longest stretch. Based on his experience, the officer believed that Richardson "was under the influence of some type of possibly narcotics." Again, hydrocodone is classified as a narcotic. This evidence, if believed, was more than sufficient to establish Richardson's impairment.

**{¶ 19}** The dissent asserts that no rational factfinder could have linked Richardson's ingestion of hydrocodone with his demonstrated impairment. Dissenting opinion at ¶ 32. When the effects of a drug are sufficiently well known—as they are with hydrocodone—expert testimony linking ingestion of the drug with indicia of impairment is unnecessary. And there *was* lay testimony that connected Richardson's impairment to the hydrocodone, i.e., the testimony of an experienced and well-trained police officer. On these facts, we hold that the evidence was sufficient to support Richardson's OVI conviction.

**{¶ 20}** Because the court of appeals erroneously concluded that expert testimony was required to link the ingestion of hydrocodone with Richardson's impairment, we reverse its judgment.

**Conclusion**

**{¶ 21}** We reverse the judgment of the Second District Court of Appeals. After holding that the evidence supporting Richardson's conviction was insufficient, the Second District held moot his manifest-weight-of-the-evidence challenge. 2015-Ohio-757, 29 N.E.3d 354, at ¶ 28. We remand the cause to the appellate court for consideration of that assignment of error.

Judgment reversed,

and cause remanded.

O'CONNOR, C.J., and O'DONNELL and KENNEDY, JJ., concur.

LANZINGER, J., dissents, with an opinion.

O'NEILL, J., dissents, with an opinion joined by PFEIFER, J.

_____

**LANZINGER, J., dissenting.**

**{¶ 22}** Based on the competing views of the evidence presented in the majority and dissenting opinions, it is clear that the issues raised in the certified conflict and the state's proposition of law are obscured by the facts and that this case is not an optimal vehicle for making a statement of law on the questions before us. I respectfully dissent and would dismiss this case as improvidently allowed.

_____

**O'NEILL, J., dissenting.**

**{¶ 23}** I must respectfully dissent. For a defendant to be found guilty of operating a vehicle while under the influence ("OVI") of a drug of abuse, there must be evidence that the defendant was under the influence of a drug of abuse *and* that the effects of that drug are consistent with the behavior of the defendant at the time of the alleged offense. The Second District Court of Appeals held that there

was no evidence to connect the use by appellee, Clinton Richardson, of hydrocodone acetaminophen to his impairment at the time of the accident. 2015-Ohio-757, 29 N.E.3d 354, ¶ 27.

**{¶ 24}** When a drug of abuse is at issue, in order to prove OVI under R.C. 4511.19(A), the state must prove that (1) the drug of abuse "influence[d]" the defendant while (2) the defendant was operating a vehicle. By its plain meaning, the statute imparts the idea of causation between use of the drug and the impairment. To violate the statute, one must be influenced, and it must be the drug of abuse doing the influencing. Here we have a case in which the judge as factfinder had some reason to infer that Richardson had taken a drug of abuse and that he was acting impaired, but there was no evidence to suggest that it was the drug of abuse that caused the observed indications of impairment.

**{¶ 25}** In this regard, this case is no different than any other criminal case in Ohio; the state has the burden of establishing every element of the crime with which the defendant is charged. *See* R.C. 2901.05(A). Here, the prosecution failed to present any evidence that Richardson's behavior, as witnessed by the driver of the stopped vehicle whom he rear-ended and by the responding officer, was due to Richardson's being under the influence of a drug of abuse. Impairment alone, no matter how severe it may be, is simply not a crime. There were numerous possible causes of the impairment, including the withdrawal theory offered by the defense which, unlike the state's theory, was actually supported by expert testimony.

**{¶ 26}** This case was decided on the sufficiency of the evidence. It is well established that the relevant question when the sufficiency of the evidence is challenged is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis sic.) *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This court has stated: "With respect to sufficiency of the evidence, ' "sufficiency" is a term of art meaning that

legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' " *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990).

{¶ 27} Reviewing the evidence presented at trial, it was undisputed that Richardson was acting unusually at the scene of the accident. Nobody denies that. The prosecution's theory was that he was under the influence of hydrocodone at that time. This was based, in part, on Richardson's admission at the scene that he "was on pain medication" at the time. The problem with that theory is that there was no evidence that the pain medication that Richardson referred to was hydrocodone. It could have been the recommended dosage of Advil, Motrin, or any other over-the-counter pain medication. *See* R.C. 4506.01(M) (defining "drug of abuse" as "any controlled substance, dangerous drug as defined in section 4729.01 of the Revised Code, or over-the-counter medication that, when taken in quantities exceeding the recommended dosage, can result in impairment of judgment or reflexes"). Richardson testified that he had not taken hydrocodone since over 48 hours before the accident. Absent expert testimony that hydrocodone continues to effect bodily functions for more than 48 hours, there was no evidence that the narcotic was causing or influencing the behavior exhibited. Richardson's behavior could have been caused by some undiagnosed medical condition.

{¶ 28} In fact, Richardson testified that the reason he hit the stopped vehicle was that he may have fallen asleep behind the wheel. Further, he outlined the side effects he had been experiencing from withdrawal from hydrocodone acetaminophen as he had run out of the medication two days earlier. Those side effects, which included drowsiness, were consistent with the behavior that he exhibited shortly after the crash.

{¶ 29} At trial, Richardson presented the expert testimony of Dr. Charles Russell, who stated that in his medical opinion, the behavior exhibited by

Richardson was completely consistent with someone going through withdrawal from hydrocodone, and not with someone being under the influence of hydrocodone. Oddly, the prosecution presented no expert testimony but, instead, relied solely on the testimony of the driver of the stopped vehicle and the responding officer. Not only was neither of them an expert in the area of side effects of medications, but they did not even testify as lay witnesses that there was a connection between the use of hydrocodone and the behavior being exhibited by Richardson. Without having shown this link, the prosecution completely failed to establish an element of the crime charged. In fact, the only expert testimony presented supported the conclusion that the behavior exhibited by Richardson was *not* consistent with someone who had recently taken hydrocodone but, instead, led to the conclusion that Richardson was experiencing hydrocodone withdrawal, exactly as he had stated.

{¶ 30} Clearly, R.C. 4511.19(A) is intended to prevent impaired individuals from operating motor vehicles on roads and highways for the safety of everyone who uses those roads and highways. It is not intended to blindly prohibit or criminalize the operation of a motor vehicle by someone who takes routine over-the-counter medications that do not negatively affect a person's ability to safely drive a vehicle. When a drug of abuse is at issue, to convict a defendant of OVI, the state must show that the defendant was under the influence of a drug of abuse that impaired the defendant's ability to safely operate a motor vehicle. That simply did not happen in this case. The prosecution fell woefully short of establishing all the elements of the OVI offense.

{¶ 31} In *State v. May*, 2d Dist. Montgomery No. 25359, 2014-Ohio-1542, the Second District addressed this exact issue. It stated:

> [W]hen a prosecution under R.C. 4511.19(A)(1)(a) is based
> on driving under the influence of medication, the State must do more

12

than simply present evidence that the defendant has taken the medication and shows signs of impairment. * * *

The essence of R.C. 4511.19(A)(1)(a) is to prohibit impaired driving while under the influence. It is certainly not intended to criminalize the operation of a vehicle by a person taking a cholesterol or blood pressure medication, let alone an anti-narcoleptic or ADHD prescription, unless that drug negatively influences the defendant's driving abilities. And in many situations, especially those involving prescription drugs, this can only be proved by direct testimony linking the influence of the drug to the driving. This could be established through the testimony of an expert who is familiar with the potential side effects of the medication, or perhaps of a layperson (such as a friend or family member) who witnessed the effect of the particular drug on the defendant-driver.

*May* at ¶ 46-47.

{¶ 32} Simply stated, for a defendant to be found guilty of operating a vehicle while under the influence of a drug of abuse, there must be evidence of the connection between the drug used and the behavior exhibited. The only scientific evidence presented at trial was that the symptoms exhibited were consistent with withdrawal from hydrocodone, and that testimony was consistent with the responding officer's observations. No rational trier of fact could have found, beyond a reasonable doubt, that Richardson was driving under the influence of hydrocodone at the time of the accident and that it was the effects of hydrocodone that caused his impairment. Not a single witness testified as to the effects of hydrocodone or that those effects were consistent with Richardson's behavior. This was the missing link in this case.

13

**{¶ 33}** We are violating 200 years of jurisprudence by permitting a lay person to give an expert opinion without qualification. Surely the responding officer was qualified to testify as to what he saw. But under no circumstances was he qualified to testify as to (1) the pharmacology of hydrocodone or (2) how that drug affected this defendant on that day. In an OVI case involving alcohol, would this majority affirm an OVI conviction based on a responding officer's testimony that "well, he looked like he was over the limit to me" based only on behavior observed by the officer? No.

**{¶ 34}** I must dissent.

PFEIFER, J., concurs in the foregoing opinion.

_____

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Carley J. Ingram and Christina E. Mahy, Assistant Prosecuting Attorneys, for appellant.

Arnold & Arnold, Ltd., Adam J. Arnold, and Kristin L. Arnold, for appellee.

_____