[Cite as *Cleveland v. Maxwell*, 2017-Ohio-4442.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104964**

# CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

# ERIC MAXWELL

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2016 TRC 008741

**BEFORE:** E.T. Gallagher, P.J., Blackmon, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** June 22, 2017

**ATTORNEYS FOR APPELLANT**

Mark Stanton
Cuyahoga County Public Defender

BY:   David Martin King
Assistant Public Defender
Courthouse Square, Suite 200
310 Lakeside Avenue
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
Law Director
City of Cleveland

BY:   Angela Rodriguez
Assistant City Prosecutor
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114

EILEEN T. GALLAGHER, P.J.:

**{¶1}** Defendant-appellant, Eric Maxwell ("Maxwell"), appeals from his conviction for operating a vehicle under the influence of alcohol ("OVI"). He raises the following assignments of error for our review:

> 1. Defendant Eric Maxwell was denied effective assistance of counsel in violation of the sixth and fourteenth amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.
>
> 2. Defendant's conviction for OVI was against the manifest weight of the evidence.

**{¶2}** After careful review of the record and relevant case law, we affirm Maxwell's conviction.

## I. Procedural and Factual History

**{¶3}** Maxwell was charged with OVI in violation of R.C. 4511.19(A)(1); failure to signal in violation of R.C. 4511.39; and OVI, with a prior conviction, in violation of R.C. 4511.19(A)(2)(a). In August 2016, the matter proceeded to a bench trial, where the following facts were adduced.

**{¶4}** Trooper Hiram Morales ("Trp. Morales"), a 13-year veteran of the State Highway Patrol, testified that on March 11, 2016, sometime after 2:00 a.m., he observed Maxwell proceeding westbound on I-90, in the area of Lorain Avenue and the West 44th Street exit. While narrating a portion of his vehicle's dash camera, Trp. Morales testified that he saw Maxwell's vehicle move from the left lane, to the center lane, and

then into the far-right lane without signaling.[1] Maxwell was driving in between the lanes and crossed over the hash marks separating the lanes of the highway. Upon observing these lane violations, Trp. Morales activated his overhead lights and Maxwell proceeded to stop on the right side of the highway exit ramp, between the right lane and the shoulder.

{¶5} Trp. Morales testified that he approached the passenger side of Maxwell's vehicle and could smell the odor of an alcoholic beverage coming from within the vehicle. Based on this observation, Trp. Morales asked Maxwell to step out of the vehicle so he could perform a field sobriety test. Regarding his experience administrating field sobriety tests, Trp. Morales testified that he received his training on field sobriety tests from the Highway Patrol and has continued his education throughout his 13-year career. During 2014 and 2015 he made more than 100 OVI arrests. He administered three tests to Maxwell.

{¶6} The first test Trp. Morales administered was the Horizontal Gaze Nystagmus test (the "HGN test"). In this test, the subject would be asked to follow, with the eyes, a stimulus such as the top of a pen or a finger, and the officer would look for an involuntary jerking of the subject's eyes. While standing within arm's length of Maxwell, Trp. Morales could smell the odor of an alcoholic beverage coming from Maxwell's breath, and observed that his eyes were red and glassy. While performing the HGN test, Trp.

---

[1] Portions of Trp. Morales's dash camera video were played for the court throughout his direct examination.

Morales noticed a lack of smooth pursuit in both of Maxwell's eyes while following the stimulus from right to left. Trp. Morales testified that Maxwell's eyes each showed distinctive jerking, indicative of intoxication. Trp. Morales did not perform the vertical-eye test because Maxwell indicated he had a prior injury that impeded his ability to look up and down.

{¶7} Trp. Morales then conducted the turn-and-walk test. He first instructed Maxwell on how to perform the test: take nine steps from the starting position, heel to toe, then turn left and take nine steps back to the starting point, all the while counting the steps out loud. Before starting, Maxwell asked to remove his boots because they were oversized. While performing this test, Maxwell broke his initial position while being told the instructions, failed to touch heel-to-toe on some of the steps, made an improper turn by turning right instead of left, improperly moved his feet, and stopped multiple times to steady himself during the test.

{¶8} Lastly, Trp. Morales conducted the one-leg-stand test. Trp. Morales instructed Maxwell to stand with his feet together, keep his arms down at his sides, raise one foot six inches off the ground with his toe pointed out, and count out loud from 1,000 on, for 30 seconds. Trp. Morales told Maxwell to lift his leg and count until he was told to stop. The test is supposed to last 30 seconds. Maxwell lifted his left leg up and started counting. Maxwell started wobbling after four seconds, and then after six seconds he lost his balance and had to reset his position. Maxwell lifted his left leg

again and started over. This time, he started to lose his balance after eleven seconds. When Trp. Morales asked him to put his foot down he stumbled slightly to the side.

{¶9} Based on his observations, Trp. Morales determined that Maxwell was impaired and placed Maxwell under arrest for OVI. Maxwell was then transported to the Lindale Police Department for breath testing. Trp. Morales testified that he read Maxwell the Bureau of Motor Vehicles 2255 form and advised him that he would be required to submit to a breath test. However, Maxwell refused to take the test.

{¶10} During his cross-examination, Trp. Morales acknowledged that he approached Maxwell's vehicle from the passenger side where Maxwell had take-out in boxes in the front passenger seat. Trp. Morales testified that although he could smell the food, he could tell the difference between the smell of food and the smell of an alcoholic beverage.

{¶11} Maxwell testified on his own behalf. On the day of the incident, Maxwell had stopped to buy chicken and tacos on his way to his mother's house. He testified that he was distracted while driving because he was texting and using his phone. He noticed Trp. Morales had turned on his lights and he pulled over. Maxwell testified he did not recall switching lanes without indicating. Throughout his testimony, Maxwell denied drinking alcohol that evening.

{¶12} Maxwell stated that he had problems with the HGN test because he had previously sustained an orbital fracture. The screw and plate in his head interfered with his ability to move his eyes up and down, but he could move them somewhat from

side-to-side. He also stated that the exit ramp was on a hill, and the ground was wet, which made it more difficult to perform the turn and walk test, and the one leg stand test.

{¶13} At the conclusion of trial, Maxwell was found guilty of both OVI and marked lanes violation. Maxwell now appeals from his OVI conviction.

## II. Law and Analysis

### A. Ineffective Assistance of Counsel

{¶14} In his first assignment of error, Maxwell argues he was denied effective assistance of counsel as guaranteed by Article I, Section 10, of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when counsel failed to challenge the admissibility of the field sobriety test evidence by not filing a motion to suppress.

{¶15} A claim of ineffective assistance of trial counsel requires both a showing that trial counsel's representation fell below an objective standard of reasonableness, and that the defendant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reviewing court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The prejudice prong requires a finding that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, with a reasonable probability being "a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *see also State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

**{¶16}** The failure to file a suppression motion is not per se ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000). Rather, counsel's failure to file a motion to suppress is ineffective assistance of counsel only if there is a reasonable probability that, had the motion been filed, it would have been granted. *State v. Watts*, 8th Dist. Cuyahoga No. 104188, 2016-Ohio-8318, ¶ 17.

**{¶17}** The Fourth Amendment of the U.S. Constitution, which is enforceable against the states through the Due Process Clause of the Fourteenth Amendment, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." *See Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Article I, Section 14 of the Ohio Constitution has language almost identical to the Fourth Amendment and affords Ohioans the same protections against unreasonable searches and seizures. *State v. Robinette*, 80 Ohio St.3d 234, 245, 685 N.E.2d 762 (1997).

**{¶18}** A traffic stop constitutes a seizure and implicates Fourth Amendment protections. *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Nevertheless, a warrantless traffic stop is constitutionally valid if the officer making the stop has "a reasonable suspicion," based on specific and articulable facts, that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967); *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, syllabus.

**{¶19}** Reasonable suspicion for a "*Terry* stop" requires something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry* at 27. The propriety of an investigative stop must be viewed in light of the totality of the circumstances "as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

**{¶20}** Once a driver has been lawfully stopped, however, an officer may not request a motorist to perform field sobriety tests unless the request is separately justified by a reasonable suspicion based upon articulable facts that the motorist is intoxicated. *Parma Hts. v. Dedejczyk*, 8th Dist. Cuyahoga No. 97664, 2012-Ohio-3458, ¶ 29, citing *State v. Evans*, 127 Ohio App.3d 56, 62, 711 N.E.2d 761 (11th Dist.1998). A court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. *State v. Dye*, 11th Dist. Portage No. 2001-P-0140, 2002-Ohio-7158, ¶ 18.

**{¶21}** In order for the results of field sobriety tests to be admissible, the state is not required to show strict compliance with testing standards, but must instead demonstrate that the officer substantially complied with the National Highway Traffic Safety Administration ("NHTSA") standards. R.C. 4511.19(D)(4)(b); *State v. Clark*, 12th Dist. Brown No. CA2009-10-039, 2010-Ohio-4567, ¶ 11. "A determination of whether the facts satisfy the substantial compliance standard is made on a case-by-case basis." *State v.*

*Fink*, 12th Dist. Warren Nos. CA2008-10-118 and CA2008-10-119, 2009-Ohio-3538, ¶ 26. If a field sobriety test is administered in substantial compliance with the applicable NHTSA standards, the results of that test are admissible; however, the weight to be given that evidence at trial is left to the trier of fact. *Columbus v. Weber*, 10th Dist. Franklin No. 06AP-845, 2007-Ohio-5446, ¶ 18.

{¶22} Applying the foregoing to the circumstances presented in this case, we find the initial traffic stop and subsequent administration of field sobriety tests were justified based on Trp. Morales's observations and professional experience. While narrating a portion of his vehicle's dash camera, Trp. Morales testified that he saw Maxwell's vehicle move from the left lane, to the center lane, and then into the far-right lane without indicating. This traffic violation was sufficient to initiate a lawful traffic stop of Maxwell's vehicle. Trp. Morales then approached the passenger side of Maxwell's vehicle where he could smell the odor of an alcoholic beverage coming from inside Maxwell's vehicle and his breath. The smell of alcohol created sufficient reasonable suspicion separately justified from the initial traffic stop to permit Trp. Morales to initiate a field sobriety test.

{¶23} With respect to the admissibility of the field sobriety test, Maxwell argues that the results of the field sobriety test should have been suppressed because his physical condition made him unable to complete portions of the HGN test. Specifically, the plate and screws in his head made him unable to look up and down. He further contends that the walk-and-turn test was performed on a slope and that "his difficulties with the one-leg

test was due to the roadside conditions." Maxwell, however, makes no claims that Trp. Morales did not provide sufficient instructions or that he otherwise failed to substantially comply with any specific standardized field sobriety test procedure. Because the record is devoid of any evidence to suggest Trp. Morales did not substantially comply with the NHTSA standards in administering the field sobriety test, we find there is a reasonable probability that, had a motion to suppress been filed, it would have been denied.

{¶24} Accordingly, Maxwell's first assignment of error is overruled

## B. Manifest Weight of the Evidence

{¶25} In his second assignment of error, Maxwell argues his conviction is against the manifest weight of the evidence.

{¶26} In contrast to a challenge based on sufficiency of the evidence, a manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion rather than production. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). This court reviews the entire record, weighs the evidence and all reasonable inferences, considers the witnesses' credibility and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶27}** In conducting such a review, this court remains mindful that the credibility of the witnesses is primarily for the trier of fact to assess. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

**{¶28}** R.C. 4511.19 (A)(1)(a) defines the OVI offense. It prohibits a person from operating a vehicle "under the influence of alcohol, a drug of abuse, or a combination of them."

**{¶29}** In challenging the weight of the evidence supporting his OVI conviction, Maxwell argues his poor performance on the field sobriety tests can be attributed to a medical condition. He contends that he offered alternative explanations for certain clues displayed in the field sobriety tests, and that the court clearly lost its way by giving undue weight to the officer's testimony.

**{¶30}** Despite Maxwell's focus on the weight given to the field sobriety test, however, this court has held that field sobriety tests are not a necessary factor in an OVI conviction. *Parma v. Benedict,* 8th Dist. Cuyahoga No. 101480, 2015-Ohio-3340, ¶ 43, citing *Solon v. Hrivnak*, 8th Dist. Cuyahoga No. 100411, 2014-Ohio-3135, ¶ 21; *State v. Strebler*, 9th Dist. Summit No. 23003, 2006-Ohio-5711, ¶ 17; *State v. Stephenson*, 4th Dist. Lawrence No. 05CA30, 2006-Ohio-2563, ¶ 19; *State v. Rouse*, 7th Dist. Belmont No. 04BE53, 2005-Ohio-6328. In addition to coordination tests, prosecutors may

establish impaired driving ability through "physiological factors such as slurred speech, bloodshot eyes, and the odor of alcohol." *Id*., citing *Hrivnak* at ¶ 18; *State v. Clark*, 8th Dist. Cuyahoga No. 88731, 2007-Ohio-3777, ¶ 13; *State v. Simms*, 9th Dist. Summit No. 23957, 2008-Ohio-4848, ¶ 6; *State v. Holland*, 11th Dist. Portage No. 98-P-0066, 1999 Ohio App. LEXIS 6143 (Dec. 17, 1999).

**{¶31}** In this case, the prosecution presented evidence both of Maxwell's physiological characteristics during the incident and the results of the field sobriety tests. Trp. Morales's dash camera video showed Maxwell cross over three lanes without signaling. Additionally, Trp. Morales testified that he observed Maxwell driving "between two lanes prior to changing lanes." Although Maxwell attributed his lane violations to texting, he offered no evidence to refute Trp. Morales's testimony that Maxwell had red and glossy eyes, and that he detected the odor of alcohol coming from within the vehicle at the time of the traffic stop, and from Maxwell's breath once he exited the vehicle.

**{¶32}** As the trier of fact, the trial court was free to give more weight to Trp. Morales's testimony, while rejecting Maxwell's assertion that his medical condition and the slope in the road accounted for the indications of impairment observed by Trp. Morales. Having reviewed the evidence, along with the reasonable inferences that can be drawn therefrom, we cannot conclude that, in resolving the conflicting testimony, that the court lost its way and created such a manifest miscarriage of justice that a new trial should be ordered.

**{¶33}** Accordingly, Maxwell's second assignment of error is overruled.

**{¶34}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cleveland Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR